

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00189-CR

DARREUS DEMONT WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 26,494

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Darreus Demont Williams was convicted by a jury of aggravated assault against a public servant. Williams pled true to the State's enhancement allegation and was sentenced to eighteen years' imprisonment. On appeal, Williams argues that the evidence is legally insufficient to support his conviction.[1] We disagree with Williams and affirm the trial court's judgment.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault against a public servant beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*,

---

[1]Williams also appeals from the following convictions entered on the same date: aggravated assault by use of a deadly weapon (cause number 06-12-00190-CR); aggravated assault by use of a deadly weapon (cause number 06-12-00191-CR); aggravated assault by use of a deadly weapon (cause number 06-12-00192-CR); and aggravated robbery with a deadly weapon (cause number 06-12-00193-CR). The complete factual background giving rise to all of these convictions is the same and is set forth in our opinion of this date in cause number 06-12-00193-CR. Therefore, this opinion only discusses the facts necessary to decide this opinion.

443 U.S. at 318–19); *Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The indictment in this case alleged that Williams, individually and acting together with Guadalupe Ramirez, III, and Vincent Thomas, intentionally or knowingly threatened Officer Joseph Fernandez with imminent bodily injury by shooting a firearm at him while knowing that he was a public servant who was investigating an aggravated robbery. Williams individually committed the offense of aggravated assault against a public servant if (1) he (2) intentionally or knowingly (3) used or exhibited a deadly weapon[2] (4) to threaten Fernandez with imminent bodily injury (5) while knowing that Fernandez was a public servant (6) who was lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (West 2011).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). "A person is criminally responsible for an

---

[2]A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012).

3

offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Also, a person is criminally responsible for the acts of another if

> in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b) (West 2011). Thus, Williams committed aggravated assault against a public servant as a party if he acted with intent to promote or assist Ramirez and/or Thomas in the commission of the offense by encouraging, aiding, or attempting to aid them in the aggravated assault of Fernandez.

The evidence was sufficient to convict Williams if he was physically present at the commission of the offense and encouraged its commission by words or other agreement. *Hartsfield*, 305 S.W.3d at 864 (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g)). In determining whether the accused participated as a party, the finder of fact may "look to the events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to the prohibited act." *Ransom*, 920 S.W.2d at 302 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)); *see King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); *Hartsfield*, 305 S.W.3d at 864.

4

In our opinion in cause number 06-12-00193-CR, we explained that the evidence was sufficient for the jury to find that Williams was one of three men who robbed Bonnie Lou's Game Room (Game Room), and that all three robbers, Williams, Ramirez, and Thomas, were acting together.

Officer Fernandez, who was already on the way to the Game Room, was "advised that . . . the suspects had already left the scene eastbound on 276 in a silver car -- silver passenger car." He testified:

> There was [sic] three suspects. . . . I had only seen two or -- three or four vehicles eastbound because I was going westbound. I knew that one of the vehicles that had passed me had to be the suspect vehicle. . . . I turned my lights and sirens off and turned around waiting on a vehicle description. And as I was waiting, . . . there was another car in front . . . going well over the speed limit.

Officer Jeff Reese "passed a deputy going eastbound in pursuit of a small, four-door vehicle." Fernandez asked Reese "to turn around with me because I was behind what I believed was a suspect vehicle. I could see inside three males – or three shadows that appeared to be males. They appeared to be sort of panicked."

Fernandez testified,

> [A]bout the 34 and 276 intersection, they acted as if they were going to turn south on 34, but instead they kind of jerked back north. The light was green and they stopped and the passenger exited the vehicle. A black male exited the front passenger's side of the vehicle. He had blue gloves and a bag in his hand. And before I could even -- I was letting dispatch know where I was; at the intersection of 34 and 276. And I didn't even get a chance to put my car in park before he started shooting at me. So I dove out of my car.
> I believe I shot off one round. And I crawled to the back of my car. My car was still moving. I was crawling because I was on the ground. And I turned over on my butt, and I pointed my gun straight back thinking he'd be right behind me, but he come [sic] out the passenger's side of the car. I could see the glare of my taillights kind of lighting him up. And he had the -- I was on the ground, and

5

he was standing right above me and had the gun pointed straight at my head. And that's when I pointed my gun towards him and opened fire.

And once he hit the ground and I knew that he -- he wasn't able to attack me anymore, I stood up and went for the suspect vehicle, which had taken off northbound on 34. And I opened fire on the car thinking that they were going somewhere to hurt somebody else or something like that. By that time I -- [Reese] had got in behind them and they went northbound on 34. And I went back to my car, which was still rolling and jumped inside and put it in park and waited for the ambulance.

Reese was a "[h]undred or hundred and fifty" yards away when the gunfire exploded. As he approached the scene of the shooting, Reese noticed "a body in the road" and "saw the deputy running to his patrol unit." The body was identified as Thomas, the robber in the gray hoodie. He died at the scene from multiple gunshot wounds next to a bag stuffed with $5,143.00 in cash.

The shooting did not end the chase. Williams and Ramirez "headed north on 34 towards Greenville" at a "high rate of speed." They continued to speed away until the vehicle was halted by Department of Public Safety-deployed spike strips. Williams was taken from the vehicle and arrested. He was described as "[h]ighly intoxicated," "[i]ncoherent, foaming at the mouth, and starting to throw up[,]" and $430.00 dollars in cash was found in his shoe.

At trial, Williams testified he was riding in the backseat of the vehicle because he believed Ramirez and Thomas were going to purchase drugs. Williams was relaxing in the backseat while the car was parked at the Game Room, "dozed off," and was awakened by slamming car doors as the robbers fled. Williams denied knowledge of the robbery, claimed he did not have a gun, was not wearing a hoodie, and alleged that he was sober. The jury was free to reject this self-serving testimony.

6

Sufficient evidence established that Williams was an active participant in the aggravated robbery at the Game Room. Three robbers entered the Game Room together and left together. All were carrying weapons. Fernandez testified that he noticed the three occupants of the getaway car panicking. As Thomas exited the vehicle with his weapon and the goal of shooting Fernandez, Williams did not exit the vehicle and surrender. He joined Ramirez in fleeing.

Under Section 7.02(a)(2) of the Texas Penal Code, the jury could have found beyond a reasonable doubt that Williams knew Fernandez was a police officer who was discharging his official duty to apprehend the Game Room robbers and that Williams encouraged, aided, or attempted to aid Thomas in intentionally or knowingly threatening Fernandez with imminent bodily injury by using a deadly weapon. Under Section 7.02(b) of the Texas Penal Code, the jury could have also found Williams responsible for Fernandez' assault since it was determined that Williams was involved in a conspiracy to rob the Game Room. They could have decided that Fernandez' assault was committed by Thomas, a co-conspirator, that the assault was committed in furtherance of escape from the robbery, and that the assault should have been anticipated as a result of carrying out the robbery, especially when Thomas exited the vehicle at the intersection with a gun. Thus, Williams would have been liable for Fernandez' assault. We find the evidence sufficient to establish that Williams was a party to the aggravated assault of a public servant.

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: July 26, 2013
Date Decided: August 2, 2013

Do Not Publish